UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL KENYON, | ) | Case No. 1:21-cv-01426 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | |
| | ) | |
| UNION HOME MORTGAGE CORP., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## OPINION AND ORDER

Plaintiff Michael Kenyon is a former employee of Union Home Mortgage Corporation, which seeks a judgment on the pleadings on five of the six counts Plaintiff brings. For the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion for partial judgment on the pleadings.

### STATEMENT OF FACTS

On Defendant's motion for judgment on the pleadings, the Court takes the following allegations in the complaint as true and construes them in favor of Plaintiff as the non-moving party.

### A. Mr. Kenyon's First Period of Employment

On July 29, 2019, Mr. Kenyon, a mortgage loan originator, accepted employment with Union Home Mortgage as a branch manager in Leesburg, Virginia. (ECF No. 1, ¶¶ 1, 7, 9, PageID #1–2.) He signed an offer letter, which stated that Union Home Mortgage would require Mr. Kenyon to sign an employment agreement

with a covenant not to compete for one year. (*Id.*, ¶¶ 7–9, PageID #2.) In addition, regarding the covenant not to compete, the offer letter stated, "[u]pon execution of a lease in Leesburg, VA a six-month extension beyond the lease termination will be required." (*Id.*, ¶ 8, PageID #2.) On the same day, Mr. Kenyon signed an employment agreement with a one-year non-compete provision. (*Id.*, ¶¶ 10–14, PageID #2–3.)

On August 28, 2019, Mr. Kenyon signed an addendum to the employment agreement. The addendum extended the covenant not to compete to March 30, 2023, the date that is "six months beyond the expiration of the Leesburg, VA office lease expiration of 9/30/22." (*Id.*, ¶¶ 15–16, PageID #3.) At the time Union Home Mortgage presented the addendum to Mr. Kenyon for execution, it represented that the Leesburg office lease had been finalized. (*Id.*, ¶ 21, PageID #4.) In fact, Union Home Mortgage did not execute the Leesburg office lease until September 9, 2019. (*Id.*, ¶ 18, PageID #3.)

### B. The Settlement Agreement

On August 27, 2020, Mr. Kenyon resigned from his employment with Union Home Mortgage. (*Id.*, ¶ 23, PageID #4.) Shortly later, Union Home Mortgage sought (1) a declaratory judgment that the covenant not to compete was enforceable and (2) a permanent injunction enforcing its terms. (*Id.*, ¶ 25, PageID #4.) The parties executed a settlement agreement, in which Mr. Kenyon agreed to return to Union Home Mortgage's employment. (*Id.*, ¶ 26, PageID #5.) The settlement agreement provided that all the terms of the employment agreement, including the covenant not to compete, remained in full force and effect. (*Id.*, ¶ 27, PageID #5.)

### C. Mr. Kenyon's Second Period of Employment

On returning to Union Home, Plaintiff alleges that he experienced retaliation and hostile working conditions. (*Id.*, ¶¶ 28, 36, PageID #5–6.) Specifically, Plaintiff alleges that Union Home Mortgage failed to repost Mr. Kenyon's personal biography to its website for at least twenty-seven days (*id.*, ¶ 29, PageID #5), failed to reactive Mr. Kenyon's office phone for thirty days (*id.*, ¶ 30, PageID #5), and allowed the parking lease at the Leesburg office to expire (*id.*, ¶ 35, PageID #6). In addition, Union Home Mortgage reassigned or redirected to other mortgage loan originators Mr. Kenyon's customers and business contacts, most of whom Mr. Kenyon had obtained in his career before his employment with Union Home Mortgage. (*Id.*, ¶¶ 31 & 53, PageID #5 & 9.)

Despite his complaints about his business prospects being improperly reassigned, including a written complaint to Union Home Mortgage's human resources department, Mr. Kenyon's concerns were never addressed or resolved. (*Id.*, ¶ 32–33, PageID #6.) Plaintiff alleges Union Home Mortgage continued to interfere with Mr. Kenyon's customer relationships as late as July 2021. (*Id.*, ¶ 34, PageID #6.) As a result of these actions, Plaintiff alleges he was constructively discharged from its employment. (*Id.*, ¶ 38, PageID #7.)

## STATEMENT OF THE CASE

Based on these allegations, Plaintiff seeks a declaratory judgment that the covenant not to compete in the employment agreement is unenforceable. (*Id.*, ¶¶ 41–51, PageID #7–9.) Also, Plaintiff brings claims for tortious interference with

3

business relationships, breach of contract, retaliation in violation of public policy, constructive discharge, and fraudulent inducement. (*Id.*, ¶ 52–97, PageID #9–14.) Defendant answered and counterclaimed, seeking preliminary and permanent injunctive relief to enforce the covenant not to compete. (ECF No. 19, ¶¶ 37–50, PageID #247–48.)

Defendant moves for judgment on the pleadings on Plaintiff's claim of tortious interference with business relationships (Count II), breach of contract (Count III), retaliation in violation of public policy (Count IV), constructive discharge (Count V), and fraudulent inducement (Count VI). (ECF No. 14.) Contending that Plaintiff filed his complaint for improper purposes, it also argues for sanctions under Rule 11. (ECF No. 14, PageID #146.) Plaintiff concedes that he cannot sustain the claims contained in Counts III through VI and opposes the imposition of sanctions. (ECF No. 21, PageID #277 & #279.) Accordingly, the parties dispute only the claim for tortious inference with business relationships (Count II). (ECF No. 21, PageID #273–77.)

## ANALYSIS

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings essentially constitutes a delayed motion under Rule 12(b)(6) and is evaluated under the same standard. *See, e.g.*, *Holland v. FCA US LLC*, 656 F. App'x 232, 236 (6th Cir. 2016). In other words, judgment on the pleadings is appropriate where, construing the material allegations of the pleadings and all reasonable inferences in the light most favorable to the non-moving party, the

4

Court concludes that the moving party is entitled to judgment as a matter of law. *Anders v. Cuevas*, 984 F.3d 1166, 1174 (6th Cir. 2021). In construing the pleadings, the Court accepts the factual allegations of the non-movant as true, but not unwarranted inferences or legal conclusions. *Holland*, 656 F. App'x at 236–37 (citing *Gregory v. Shelby Cnty.*, 220 F.3d 433, 446 (6th Cir. 2000)).

On a motion under Rule 12(c), courts "must follow the Supreme Court's changes to the pleading standards in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)." *Bates v. Green Farms Condo. Assoc.*, 958 F.3d 470, 480 (6th Cir. 2020) (citing *Engler v. Arnold*, 862 F.3d 571, 575 (6th Cir. 2017)). Only "well-pleaded factual allegations" that "plausibly give rise to an entitlement of relief" and "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" will survive. *Id.* (quotation and citation omitted). Conversely, "[m]ere labels and conclusions are not enough[.]" *Engler*, 862 F.3d at 575. Nor are facts that are "merely consistent with" liability. *Bates*, 958 F.3d at 480 (quotation omitted).

I. **Tortious Interference with Business Relationships (Count II)**

Under Ohio law, which governs the parties' dispute, the tort of interference with a business relationship occurs where "a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relationship with another." *A & B–Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73 Ohio St.3d 1, 14, 1995-Ohio-66, 651 N.E.2d 1283 (1995). "The elements of tortious interference with a business relationship are

(1) a business relationship, (2) the wrongdoer's knowledge thereof, (3) an intentional interference causing a breach or termination of the relationship, and (4) damages resulting therefrom." *Geo-Pro Serv., Inc. v. Solar Testing Labs., Inc.*, 145 Ohio App. 3d 514, 525, 763 N.E.2d 664 (Ohio Ct. App. 2001) (citation omitted). The intentional interference must be improper. *Dryden v. Cincinnati Bell Tel. Co.*, 135 Ohio App. 3d 394, 400, 734 N.E.2d 409 (Ohio Ct. App. 1999).

Plaintiff brings a claim for tortious interference with his business relationships with customers, potential customers, and business referral sources. (ECF No. 1, ¶¶ 53 & 55, PageID #9.) Defendant contends that it was a party, or third-party beneficiary, of all of Plaintiff's business relationships and that, as a matter of law, it cannot interfere with its own relationships. (ECF No. 14-1, PageID #135–36.) In the alternative, Defendant maintains that Plaintiff has not plead sufficient facts to make a plausible claim. (ECF No. 14-1, PageID #135.) In reply, Plaintiff argues that the business relationships are Mr. Kenyon's, not Union Home Mortgage's, because they predated Mr. Kenyon's employment with Union Home Mortgage. (ECF No. 21, PageID #274.) Therefore, Defendant cannot claim Mr. Kenyon's prospective clients as its own unless Union Home Mortgage had an independent relationship with those individuals. (*Id.*)

### I.A. Ohio Law

When applying State law, the Court must "anticipate how the relevant state's highest court would rule in the case and are bound by controlling decisions of that court." *Vance v. Amazon.com*, 852 F.3d 601, 610 (6th Cir. 2017) (quoting *In re Dow*

6

*Corning Corp.*, 419 F.3d 543, 549 (6th Cir. 2005)). If, as here, "the state supreme court has not yet addressed the issue," this Court must render a prediction "by looking to all the available data." *Allstate Ins. Co. v. Thrifty Rent-A-Car Sys., Inc.*, 249 F.3d 450, 454 (6th Cir. 2001)). "Relevant data include decisions of the state appellate courts, and those decisions should not be disregarded unless" the Court is "presented with persuasive data that the [state supreme court] would decide otherwise." *Id.*; *see also Faber v. Ciox Health, LLC*, 944 F.3d 593, 601 (6th Cir. 2019).

An Ohio appellate court has ruled that "[a] person cannot tortiously interfere with his own business relationship." *Dolan v. Glouster*, 173 Ohio App. 3d 617, 2007-Ohio-6275, 879 N.E.2d 838, ¶ 35 (Ohio Ct. App. 2007) (rejecting the claim that an employee in his official capacity tortiously interfered with a business relationship to which his employer was a party). And this District has cited *Dolan* for that proposition. *See, e.g.*, *Carter v. PJS of Parma, Inc.*, No. 1:15-CV-1545, 2016 WL 1316354, at *3 (N.D. Ohio Apr. 4, 2016) (rejecting servers' claim that the restaurant tortiously interfered with their business relationship with customers because the restaurant was a party to the relationship between servers and customers); *Mumaw v. Ohio State Racing Comm'n*, No. 1:13-CV-1048, 2015 WL 1471945, at *10 (N.D. Ohio Mar. 31, 2015) (rejecting the tortious interference claim where the allegedly affected business relationship was the one between the plaintiffs and the defendants, not a third party).

Plaintiff contends that, rather than relying on *Dolan*, the Court is permitted to anticipate how the Ohio Supreme Court would rule in this case. (ECF No. 21,

7

PageID #274 n.2.) Fair enough. However, the Court should not disregard a state appellate decision unless presented with persuasive data that the Ohio Supreme Court would decide otherwise. *Allstate Ins.*, 249 F.3d at 454. Defendant has not made such a showing. Accordingly, the Court determines, as a matter of Ohio law, that Union Home Mortgage cannot tortiously interfere with its own business relationships. *Dolan*, 173 Ohio App.3d 617, 2007-Ohio-6275, 879 N.E.2d 838, at ¶ 35.

### I.B. Mr. Kenyon's Business Relationships

The question remains whether Mr. Kenyon's business relationships are Union Home Mortgage's "own business relationships." At issue are Mr. Kenyon's relationships with "customers, potential customers, and business referral sources, most of whom Kenyon obtained in his more than 12-year-long career prior to his employment with Union Home." (ECF No. 1, ¶ 52, PageID #9.) Plaintiff alleges that Defendant first interfered with those relationships after he returned to employment with Defendant in September 2020 (*id.* ¶¶ 26, 28, PageID #5) and continued to interfere until "as late as July 2021" (*id.*, ¶ 34, PageID #6). Mr. Kenyon left Union Home Mortgage in July 2021. (ECF No. 19, ¶ 30, PageID #246; ECF No. 19-5, PageID #263.) Therefore, at all times relevant to this claim, Union Home Mortgage employed Mr. Kenyon.

The parties dispute whether Mr. Kenyon's business relationships are also Union Home Mortgage's business relationships. Defendant contends that "Kenyon could have no business relationship with [Union Home Mortgage's] customers to which [Union Home Mortgage] is not a party" or a third-party beneficiary. (ECF

8

No. 14-1, PageID #135.) For his part, Plaintiff argues that Union Home Mortgage cannot subsume all of Mr. Kenyon's relationships by virtue of his employment, especially with the prospective customers and business referral sources who did not become Union Home Mortgage's customers. (ECF No. 21, PageID #275–76.) Outside of their relationships with Mr. Kenyon, these individuals never engaged in business or contracted with Union Home Mortgage. Further, Mr. Kenyon's business relationships with potential customers and referral sources, and with at least one customer of Union Home Mortgage, predated Mr. Kenyon's employment. (ECF No. 21, PageID #275; ECF No. 1, ¶ 31, PageID #6.)

To support its position that Mr. Kenyon's business relationships were also its own, Defendant relies on *Carter v. PJS of Parma, Inc.*, 2016 WL 1316354 (N.D. Ohio Apr. 4, 2016). There, a group of servers alleged that the restaurant owners tortiously interfered with the servers' business relationships with customers of the restaurant. *Id.* at *3. Consistent with the principle announced in *Dolan*, the court held that the wrongdoer must be a non-party to the contract. *Id.* Finding that the restaurant owners were not a third party to the alleged business relationship between the servers and customers, the court dismissed the tortious interference claim. *Id.* That dismissal rested on two determinations: (1) the restaurant owners had "a direct economic interest in their relationship with their own customers"; and (2) the restaurant owners were "an essential party to the allegedly injured business relationship" between the servers and customers because, without the restaurant owners, the servers would have had "no relationship at all" with the customers. *Id.*

9

As in *Carter*, Union Home Mortgage had a direct economic interest in the business relationships between Mr. Kenyon, its mortgage loan originator, and his customers, potential customers, and business referral sources. However, unlike in *Carter*, Union Home Mortgage was not an "essential party" to these relationships in the sense that, without Union Home Mortgage, Mr. Kenyon still would have had business relationships with these individuals—at least based on the facts as pled. Further, *Carter* does not address whether an employer may interfere with its employees' business relationships with potential customers and referral sources which predate their employment. At most, *Carter* applies to Mr. Kenyon's relationships with Union Home Mortgage's customers. Even as to them, however, *Carter* addresses only employee-customer relationships that arise from the employment, not relationships that predate employment (as Mr. Kenyon's relationship with at least one customer did). ([ECF No. 1](), ¶ 31, PageID #6.) Therefore, *Carter* is factually distinguishable from this case and does not require the conclusion that Mr. Kenyon's business relationships were necessarily those of Union Home Mortgage as well.

For similar reasons, *Welker v. Orkin, LLC*, No. 5:13-CV-126, 2014 WL 1572535 (M.D. Ga. Apr. 17, 2014), is also distinguishable and does not control here in any event. In *Welker*, an employee claimed that his employer tortiously interfered with his employment relationship and with the employee's relationships with customers. *Id.* at *12. The court concluded that the tortious interference claim failed as a matter of Georgia law because the employer was a party both to the employment relationship

10

and to the relationship with its own customers. *Id.* As with *Carter*, *Welker* applies at most to employee-customer relationships, but does not address relationships that predate the employment.

Additionally, Defendant relies on *Allstate Insurance Co. v. Papanek*, No. 3:15-CV-240, 2018 WL 3537140, at *13 (S.D. Ohio July 23, 2018), *on reconsideration in part*, No. 3:15-CV-240, 2019 WL 6698342 (S.D. Ohio Dec. 9, 2019). There, the terms of an agency agreement authorized a former insurance agent, on termination, to sell her economic interest in her book of business. *Id.* at *3. However, the insurance company retained the right to approve or disapprove such a transfer. *Id.* The former insurance agent alleged that the insurance company tortiously interfered with her business relationships by impeding her ability to sell her book of business. *Id.* at *13. The court affirmed that the alleged wrongdoer must be a third party to the alleged business relationship. *Id.* at 13 (citing *Dolan*, 173 Ohio App. 3d 617, 2007-Ohio-6275, 879 N.E.2d 838, at ¶ 35, and *Carter*, 2016 WL 1316354, at *3). Because the insurance company retained a contractual interest in the sale of the agent's book of business, the court determined that "any prospective business relationship [the agent] had with a potential buyer of her book of business was also a prospective business relationship between [the insurance company] and the potential buyer." *Id.* Therefore, the insurance company was not a third party to the business relationship, and the claim of tortious interference failed. *Id.* Like *Carter* and *Welker*, *Allstate Insurance is* distinguishable from this case. Unlike the insurance company, Union Home Mortgage had no contractual interest in Mr. Kenyon's business relationships that

11

rendered Union Home Mortgage a party to them, at least not one contractual interest in the record at this stage of the proceedings.

While Plaintiff acknowledges *Dolan*'s holding that a person cannot tortiously interfere with his own business relationship, Plaintiff argues that its scope is limited, pointing to *Wellington v. Lake Hospital System, Inc*, No. 1:19-CV-0938, 2020 WL 890572 (N.D. Ohio Feb. 24, 2020). (ECF No. 21, PageID #274.) In *Wellington*, a hospital approved the plaintiff's request to observe one of the hospital's doctors but later revoked its permission. *Id.* at *12. The plaintiff alleged the hospital tortiously interfered with her business relationship with the doctor she had arranged to observe. *Id.* The hospital contended that because it employed the doctor, it could not be considered a third party to the doctor's relationship with the plaintiff. *Id.* The court held that *Dolan* "does not address whether an employer can interfere with a business relationship between the plaintiff and of one of its employees." *Id.* Rather, "it is conceivable that a tortious interference with business relationship claim could arise in some situations when [an employer] interferes with a business relationship one of its employees has with a third party." *Id.* at *13. Accordingly, the court held that the hospital failed to show that the alleged business relationship was necessarily with "itself" such that the tortious interference claim must fail under *Dolan*.

While *Wellington* is factually different from this matter, as Defendant contends (ECF No. 25, PageID #314–15), it articulates the applicable principle that an employment relationship, without more, does not establish that the employer is a party to its employee's business relationships. Plaintiff and Defendant dispute

12

whether Mr. Kenyon's business relationships are also Union Home Mortgage's. In the context of a Rule 12(c) motion, the burden is on the moving party to show it is entitled to judgment as a matter of law. Defendant moves for judgment that, as a matter of law, it cannot interfere with its employee's business relationships and that its employee's business relationships with customers, perspective customers, and referral sources must be considered Union Home Mortgage's business relationships also. However, Defendant has not cited any case law holding that an employee's "book of business" of customers, potential customers, and referral sources, which he brought to the employment, must be considered the employer's as well. Therefore, as a matter of law, the Court determines that Defendant has failed to show that Mr. Kenyon's business relationships are necessarily Union Home Mortgage's as well. Making such a determination may well depend on the particular facts and circumstances of those relationships, or each of them.

**I.C.     Union Home Mortgage's Alleged Interference**

In the alternative, Defendant argues that Plaintiff fails to allege sufficient facts to support his tortious interference claim. ([ECF No. 14-1](), PageID #135.) As to the facts supporting this claim, Plaintiff alleges that Union Home Mortgage reassigned Mr. Kenyon's customers, potential customers, and referral sources to other mortgage loan officers and that Union Home Mortgage continued such reassignment even after Mr. Kenyon complained and Union Home Mortgage promised such activity would cease. ([ECF No. 1](), ¶¶ 55, 59, PageID #9–10.) Also, Plaintiff alleges that Union Home Mortgage failed to repost Mr. Kenyon's profile on

13

its website where it might be seen by potential customers; failed to reactivate Mr. Kenyon's office phone; and allowed Mr. Kenyon's office parking access to expire. (ECF No. 1, ¶¶ 29, 30, 35, PageID #5–6.) Plaintiff alleges that these actions were "not in keeping with the course of dealing and custom that it has developed with its loan originators and branch managers" and that Union Home Mortgage engaged in this "intentional and malicious" conduct specifically to retaliate against Mr. Kenyon after he attempted to end his employment there. (ECF No. 1, ¶¶ 56, 58, PageID #9.)

In response, Defendant maintains that its actions were "clearly and unequivocally justified." (ECF No. 14-1, PageID #135.) In part, Defendant justifies its conduct by reference to the Covid-19 pandemic and the challenges it created for employees working remotely. (ECF No. 14-1, PageID #135.) Further, Defendant justifies its conduct in reassigning Mr. Kenyon's business prospects based on Union Home Mortgage's "right to defend its legally protectable interests in said relationships." (ECF No. 14-1, PageID #135.) In support, Defendant cites *Clauder v. Holbrook*, 1st Dist. Hamilton No. C-990145, 2000 WL 98218, at *3 (Jan. 28, 2000). (ECF No. 14-1, PageID #135.) In *Clauder*, the court recognized that one is "privileged purposely to cause another not to . . . continue a business relation . . . with a third person by in good faith asserting . . . a legally protected interest of his own which he believes may otherwise be impaired or destroyed." *Id.* at *3 (citing Restatement (Second) of Torts § 763). But Defendant does not identify the legally protected interest being asserted. To the extent Defendant claims a legally protected interest in Mr. Kenyon's business relationships, this claim fails at the pleading stage because

14

Defendant has not shown that Mr. Kenyon's relationships are necessarily Union Home Mortgage's relationships, as discussed above.

In its reply brief, Defendant additionally argues that the privilege of fair competition justifies its conduct. ([ECF No. 25](), PageID #315–16.) The Ohio Supreme Court has adopted the affirmative defense of "fair competition" from Section 768 of the Restatement (Second) of Torts (1979). *Horter Inv. Mgmt., LLC v. Cutter*, 257 F. Supp. 3d 892, 926, 928 (S.D. Ohio 2017) (citing *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 85 Ohio St. 3d 171, 178–79, 1999-Ohio-260, 707 N.E.2d 853 (1999)). The privilege of fair competition applies to competing entities. *See Kehoe Component Sales Inc. v. Best Lighting Prods., Inc.*, 796 F.3d 576, 594 (6th Cir. 2015) (citing Restatement (Second) of Torts § 768, cmt. e) (holding that the protection for fair competition promotes superior efficiency and service in the marketplace). An employer and its employee are not competitors in the marketplace. Accordingly, Defendant's fair competition contention is misplaced on the facts alleged.

The specific allegations of Union Home Mortgage's conduct, combined with the claim that the conduct constituted intentional retaliation against Mr. Kenyon outside the normal course of business, suffice to state a claim of tortious interference. Defendant references the business disruption caused by the Covid-19 pandemic, which might explain the conduct at issue. However, "[w]here there is room for disagreement on whether the defendant acted improperly, the determination is an issue of fact that is to be decided by the jury." *Kehoe Component Sales*, 796 F.3d at 594 (citing Restatement (Second) of Torts § 767, cmt. *l* and *Brookeside Ambulance,*

15

*Inc. v. Walker Ambulance Serv.,* 112 Ohio App. 3d 150, 157, 678 N.E.2d 248 (Ohio Ct. App. 1996)). Accordingly, the Court denies Defendant's motion for judgment on the pleadings on the tortious interference claim.

## II.     Sanctions

Defendant closes its motion for judgment on the pleadings with an argument for sanctions under Rule 11 against Plaintiff, his counsel, or both. (ECF No. 14, PageID #146.) As a basis for this request, Defendant maintains that Plaintiff abandons four claims pled in his complaint, demonstrating that he asserted them for improper purposes.

Rule 11 imposes an obligation that every "pleading, written motion, or other paper" submitted to a court, after reasonable inquiry, "is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1). In determining whether an attorney or party violates this rule, the Court applies an objective standard of reasonableness. *See Ridder v. City of Springfield*, 109 F.3d 288, 293 (6th Cir. 1997) ("In this circuit, the test for imposition of Rule 11 sanctions is whether the attorney's conduct was reasonable under the circumstances.") (citing *Mann v. G & G Mfg., Inc.*, 900 F.2d 953, 958 (6th Cir. 1990)). "[A]n attorney's good faith is not a defense." *Jackson v. Law Firm of O'Hara*, 875 F.2d 1224, 1229 (6th Cir. 1989).

The Court "is given wide discretion" to decide what constitutes objective reasonableness under the circumstances. *INVST Fin. Grp. Inc. v. Chem–Nuclear Sys.*, Inc., 815 F.2d 391, 401 (6th Cir. 1987). For a violation of this rule, "the court

16

may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). Notwithstanding this language, the law of this Circuit mandates imposing sanctions for a violation of Rule 11. "If a district court concludes that Rule 11 has been violated, the court has no discretion and must impose sanctions." *INVST Fin. Grp.*, 815 F.2d at 401.

Based on the record and totality of facts and circumstances, and employing a standard of objective reasonableness, the Court finds that Plaintiff and his counsel did not violate Rule 11 and that imposing sanctions against Plaintiff or his counsel is not warranted for two reasons. *First*, Defendant did not comply with the procedure for requesting sanctions. Rule 11(c)(2) provides that a "motion for sanctions must be made separately from any other motion[.]" Defendant included its request for sanctions as part of its motion for judgment on the pleadings. Further, Defendant provides no reason to believe it complied with the safe-harbor provision of Rule 11(c)(2) before seeking sanctions. *Second*, the Court cannot say that there are no non-frivolous arguments for extension or modification of existing law or establishing new law on the claims asserted in Count III (breach of contract), Count IV (retaliation in violation of public policy), Count V (constructive discharge), and Count VI (fraudulent inducement). Defendant's contrary belief does not make it so.

Defendant might understandably have great frustration at briefing a Rule 12 motion directed to those claims, only to have Plaintiff abandon them—all the more so because Defendant raised the potential for sanctions in its answer. (ECF No. 5, PageID #79 (second defense), 80 (third defense) & 81 (prayer for relief).) But the

17

procedural prerequisites for a Rule 11 request help distinguish litigation bluster from a genuine threat on which a party intends to act. Had Defendant followed the procedural requirements here, it would be in the same position. That is, it complains of having had to brief claims that Plaintiff abandoned; but compliance with the Rule 11(c)(2) safe-harbor provision requires drafting and serving, but not filing, a motion. Either way, Defendant drafts a motion—whether under Rule 11 or Rule 12(c). And in fairness to Plaintiff, the notice Defendant provided in its answer was not specific to the counts Plaintiff abandoned in response to the motion for judgment on the pleadings. As relevant here, Defendant's answer amounts to little more than a vague assertion that Plaintiff had made factual and legal assertions that might violate Rule 11. Compliance with the safe-harbor provision of the Rule would have provided proper notice and resulted in avoidance of the briefing on Counts III through VI about which Defendant now complains.

Defendant's argument in reply that it is not seeking sanctions, but merely suggesting that the Court *sua sponte* impose them, is disingenuous—a word the Court does not use lightly. Again, Defendant overlooks the procedural requirements and safeguards of the Rule. Before imposing sanctions on its own initiative, Rule 11(c)(3) mandates that the Court order an attorney, law firm, or party to show cause why specifically identified conduct does not violate the Rule. The Court knows how to impose Rule 11 sanctions on its own initiative—and it is not done how Defendant implies.

The Court closes this discussion with an admonition to all parties and counsel. The Court will not tolerate the sort of sharp practice represented by Defendant's request for sanctions. Nor does such practice advance the overall resolution of this dispute—whether that resolution ultimately comes by way of motion, trial, or otherwise. In every instance, the Court expects that counsel will follow the Rules and the Court's Civil Standing Order, behave professionally and ethically, and conduct themselves as officers of the Court. Nothing less.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion for partial judgment on the pleadings. Specifically, the Court **GRANTS** the motion as it relates to the breach of contract claim (Count III), the wrongful retaliation claim (Count IV), the constructive discharge claim (Count V), and the fraudulent inducement claim (Count VI), and **GRANTS JUDGMENT** on those claims in favor of Defendant. But the Court **DENIES** Defendant's motion as to the tortious interference with business relationships claim (Count II).

**SO ORDERED.**

Dated: January 21, 2022

J. Philip Calabrese
United States District Judge
Northern District of Ohio